24 C.C.P.A.(Patents)

## In re FOSTER.

### Patent Appeal No. 3701.

Court of Customs and Patent Appeals.
Dec. 21, 1936.

Forbes Silsby, of New York City (I. Harry Rosenberg, of New York City, of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

There are here involved four claims, numbered 21, 22, 23, and 24, for a method of purification of catalytic phthalic anhydride, an appeal having been taken to this court from the decision of the Board of Appeals of the United States Patent Office, affirming the decision of the Examiner rejecting them. Numerous claims stand allowed.

The appealed claims read:

"21. In the purification of catalytic phthalic anhydride, the steps which comprise distilling and refluxing the phthalic anhydride until a colorless distillate is obtained.

"22. In the purification of catalytic phthalic anhydride, the steps which comprise boiling the phthalic anhydride, condensing the vapors returning the condensate to the boiling phthalic anhydride, continuing the boiling, condensation and return of condensate until a colorless phthalic anhydride condensate is obtained, and then collecting the phthalic anhydride condensate.

"23. In the purification of catalytic phthalic anhydride, the steps which comprise boiling the phthalic anhydride, subjecting the resulting vapors to fractional condensation and return of the condensate to the boiling phthalic anhydride while withdrawing phthalic anhydride vapors, condensing the withdrawn vapors of phthalic anhydride to form a condensate, returning the latter condensate to the boiling phthalic anhydride, continuing the boiling, fractionation, condensation and return of condensate until a colorless phthalic anhydride condensate is obtained, and then collecting the condensate.

"24. In the purification of catalytic phthalic anhydride by heating it with a condensing agent, the improvement which comprises heating impure catalytic phthalic anhydride with the condensing agent, boiling and refluxing the phthalic anhydride until a colorless phthalic anhydride distillate is obtained, and then distilling off and collecting purified phthalic anhydride."

The references cited are: Campbell, 1,192,987, August 1, 1916; Mann et al., 1,601,404, September 28, 1926; Bowers, 1,728,225, September 17, 1929; Lake (British), 13,892, September 26, 1888; Story (British), 8,875, of 1905.

While the brief on behalf of appellant alleges that the Examiner "apparently misread the claims," we do not understand that any question is raised as to the accuracy of his description of appellant's process, which is as follows:

"This is a process of purifying phthalic anhydride. The usual process of making phthalic anhydride is to pass vapor of naphthalene with air over a catalyst at about 400°C. The phthalic anhydride is condensed from the vapors either as a solid or liquid depending on whether the temperature is below or above 131°. This anhydride contains by-products from the oxidation which discolor the anhydride and may cause other impure products resulting from other reactions in which the anhydride is used. Pure anhydride is white and the object of this process is to fix the impurities so that they will not be distilled off with phthalic anhydride. In this process the impurities are condensed by the aid of sulfuric acid as a condensing agent. Thirty parts of anhydride to 1 or 2 parts concentrated sulfuric acid are charged into a still and heated to 180°-285° for two or three hours or until no more $SO_2$ is evolved. After this the temperature is raised to the boiling point and the distillate is refluxed until it is colorless when it is recovered condensed into a receiver. The boiling point of phthalic anhydride is 285°C., hence, in a closed vessel or one with a reflux condenser no anhydride would be lost during the first heating period. Only a relatively smaller portion would be lost in an open vessel. If the last of the distillate is colored, it is placed with a subsequent batch to be purified.

"As an alternative process the distillate is fractionally collected condensed into a plurality of portions; the darker portions are then returned to the still. New

claim 23 is suggestive of this process in "fractionation", line 8 thereof, and is probably intended to read upon this modification rather than upon the preferred process. * * *

"In the explanation of the invention, references and the rejection, the distinction between chemical and physical condensation should be kept in mind. The chemical condensation is that which occurs in the treatment of the phthalic anhydride with the reagent which changes the impurities into such form that they will not volatize. Physical condensation is the recovery in solid or liquid phase by cooling the vapors."

As the case comes to us, the sole issue is whether the step of "refluxing" renders the claims patentable. Claim 24 has a limitation not present in the other claims, it being that of heating impure catalytic phthalic anhydride with a condensing agent, but it is not understood that anything is claimed for this particular limitation, apart from the additional step of refluxing.

By refluxing, as we understand appellant's process, it is meant that he continues to return the condensate described for additional boiling, etc., until it reaches a stage of substantial purity, being, when in a pure liquid state, colorless like water and, when in a pure solid state, "snow white."

It seems quite clear that the patent to Bowers discloses all that appellant claims, except the refluxing step. It may be said that the record shows that an application of appellant, of which the present application is a continuation, was at one time involved in an interference with Bowers and others, and certain counts of that interference corresponding to, but somewhat broader than, the claims here involved, no refluxing step being included therein, were held not patentable over Bowers, the interference being dissolved as to such counts. Both the Examiner and the Board in their decisions in the instant case referred to the interference proceeding, reciting its history briefly. They then rejected on Bowers in view of the other references which were cited as showing refluxing in the field of chemical art.

It is conceded that no prior art was cited showing a refluxing step with respect to the purification of phthalic anhydride, but it was held in effect that, since it was old and well known in the chemical art to use such step for purifying other substances, appellant's utilization of it in this particular field did not constitute invention.

The Board said:

"The nature and the use of the reflux action is well known in the chemical arts for securing thorough reaction in and separation of reagents from mixtures, either before desired vapors are allowed to escape or during the escape of desired vapors to be recovered, generally the latter situation. We see no difference in principle or result in the application of the reflux action in the situation presented by the appealed claims than in other relations in the chemical art as set forth by the citations. Applicant's contention that some new and unobvious results are secured from the application of the refluxing step to catalytically prepared phthalic anhydride, has been carefully considered. While there may be unidentified products in the catalytic product, it is our opinion that whether these products are known or not it is suggestive from general chemical procedure as illustrated partly by the citations, to apply fractional condensation and refluxing in this relation both up to the time the phthalic anhydride is ready to come over and while it is being distilled. This is regarded as only an application of well known elementary chemical steps with expected results. We do not overlook applicant's claim that he is enabled to secure a highly refined product but are still not convinced that the application of this method of procedure rises above the expected skill of those working in the organic chemical arts."

Counsel for appellant was heard in oral argument before us and also filed an extensive and analytical brief which has had our careful study. So far as we can discern, every argument presented before us was presented to and received the consideration of the several tribunals of the Patent Office who, as experts, passed upon the various phases of the controversy. Aside from the application itself and the references cited, there is nothing in the nature of evidence in the record, and we are remitted solely to the arguments made for determination of the issue. The tribunals below agreed substantially in detail as to the reasons for rejection; so, we have not only concurring decisions upon the conclu-

sion but concurrence in the explicit reasons therefor.

■ Appellant stresses the fact that at least two of the claims were for a considerable period, while the application was pending in the Patent Office, regarded as allowable. This we do not look upon as being of any particular consequence. In re Ellis, 86 F.(2d) 412, 24 C.C.P.A. (Patents) ——, decided December 7, 1936.

■ It is further argued on behalf of appellant:

"Appellant's claims do not call for a mere repetition of the Bowers process. To the extent Bowers teaches any retreatment, it is a retreatment involving further heating with the chemical condensing agent until the impurities become non-volatile before again distilling. This is not appellant's process. Appellant's claims call for a return of the condensate to the boiling phthalic anhydride. This is not a mere repetition of the heating treatment but a re-fractionation."

Granting this to be a proper construction of all the claims, it does not seem to us, under the facts of the case, that numerous repetitions of boiling and distilling to obtain the desired result present any greater inventive concept than would be presented by just one refluxing operation. The brief of appellant presents drawings said to show the apparatus used by Bowers and that used by appellant. The drawing of the latter shows means, described as a "sight glass," through which the condensate can be observed to ascertain when it has reached the desired stage of purity. The claims do not specify any particular number of refluxing operations necessary to bring the condensate to such stage. Apparently this is determined by an operator skilled in the art who observes the color of the condensate at the point indicated. Such of it as may have attained the desired color is withdrawn into a receiver provided therefor; such of it as has not attained the desired color is again passed through the apparatus for reboiling and redistillation, and so on until the whole is brought to the stage of purity desired. It seems to us to be a matter of skill rather than a matter of invention. Appellant has merely applied a process, or a step of a process, well known in the chemical art, to a different chemical which, in our opinion, did not involve invention. In re Dreyfus, 65 F.(2d) 472, 20 C.C.P.A. (Patents) 1204.

The authorities cited on behalf of appellant have been examined. It is not felt that they inure to his benefit upon the question here involved. The pertinent facts in each of the cases so cited are distinguishable from the facts which are pertinent here.

The decision of the Board of Appeals is affirmed.

Affirmed.